# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| rue21, inc., *et al.*,[1] | ) | Case No. 17-22045 (GLT) |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | (Jointly Administered) |
| | ) | |
| rue21, inc., *et al.*, | ) | |
| | ) | |
| Movants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| No Respondent. | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## DEBTORS' JOINT PLAN OF REORGANIZATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST. THIS PLAN IS SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTORS' SECURITIES) BEFORE THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.

Jonathan S. Henes, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (*pro hac vice* admission pending)
Robert A. Britton (admitted *pro hac vice*)
George Klidonas (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Proposed Counsel to the*
*Debtors and Debtors in Possession*

Eric A. Schaffer (PA I.D. #30797)
Jared S. Roach (PA I.D. #307541)
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222
Telephone:      (412) 288-3131
Facsimile:      (412) 288-3063

*Proposed Local Counsel to the Debtors*
*and Debtors in Possession*

Dated as of: June 1, 2017

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: rue21, inc. (1645); Rhodes Holdco, Inc. (6922); r services llc (9425); and rue services corporation (0396). The location of the Debtors' service address is: 800 Commonwealth Drive, Warrendale, Pennsylvania 15086.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ............................................................................................................................1
    A.    Defined Terms ...........................................................................................1
    B.    Rules of Interpretation ...........................................................................15
    C.    Computation of Time .............................................................................15
    D.    Governing Law .......................................................................................15
    E.    Reference to Monetary Figures ..............................................................15
    F.    Reference to the Debtors or the Reorganized Debtors ...........................15
    G.    Controlling Document ............................................................................16

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, DIP ABL CLAIMS, DIP
NEW MONEY TERM LOAN CLAIMS, DIP ROLL-UP TERM LOAN CLAIMS AND UNITED
STATES TRUSTEE STATUTORY FEES ..........................................................................................16
    A.    Administrative Claims and Professional Fee Claims .............................16
    B.    Professional Compensation ....................................................................16
    C.    DIP ABL Claims ....................................................................................17
    D.    DIP New Money Term Loan Claims ......................................................17
    E.    DIP Roll-Up Term Loan Claims ............................................................18
    F.    Priority Tax Claims ................................................................................18
    G.    United States Trustee Statutory Fees .....................................................18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................18
    A.    Classification of Claims and Interests ....................................................18
    B.    Treatment of Claims and Interests .........................................................19
    C.    Special Provision Governing Unimpaired Claims ..................................23
    D.    Elimination of Vacant Classes ...............................................................23
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes .............23
    F.    Intercompany Interests, Intercompany Claims, and Existing Interests ...23
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN.................................................24
    A.    General Settlement of Claims .................................................................24
    B.    No Substantive Consolidation.................................................................24
    C.    Restructuring Transactions .....................................................................24
    D.    Sources of Consideration ........................................................................25
    E.    Issuance of New Equity ..........................................................................25
    F.    Exit Credit Facilities ..............................................................................26
    G.    Continued Corporate Existence...............................................................26
    H.    Vesting of Assets in the Reorganized Debtors ........................................27
    I.    New Organizational Documents ..............................................................27
    J.    Directors, Managers, and Officers of the Reorganized Debtors..............27
    K.    Registration Exemptions ........................................................................27
    L.    Subordination .........................................................................................28
    M.    Intercompany Account Settlement..........................................................28
    N.    Cancellation of Existing Securities and Agreements ..............................28
    O.    Corporate Action.....................................................................................29
    P.    Effectuating Documents; Further Transactions.......................................29
    Q.    Section 1146 Exemption .........................................................................30
    R.    Employee Arrangements of the Reorganized Debtors ............................30
    S.    Management Equity Incentive Plan .........................................................30
    T.    Director and Officer Liability Insurance .................................................30
    U.    Preservation of Causes of Action.............................................................30
    V.    Avoidance Actions..................................................................................31

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..............................31
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ....................31
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases......................32
    C.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed...................32
    D.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases...........33
    E.    Indemnification Obligations.......................................................................................33
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements........33
    G.    Reservation of Rights................................................................................................33
    H.    Nonoccurrence of Effective Date...............................................................................33
    I.    Contracts and Leases Entered Into After the Petition Date .........................................33

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...........................................................34
    A.    Timing and Calculation of Amounts to Be Distributed ..............................................34
    B.    Distributions Generally; Disbursing Agent................................................................34
    C.    Rights and Powers of Disbursing Agent ...................................................................34
    D.    Distributions on Account of Claims Allowed After the Effective Date........................34
    E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions....................35
    F.    Manner of Payment .................................................................................................36
    G.    Compliance with Tax Requirements ..........................................................................36
    H.    No Postpetition Interest on Claims ...........................................................................36
    I.    Claims Paid or Payable by Third Parties....................................................................36
    J.    Allocation................................................................................................................37

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS ..................................................................................................................37
    A.    Allowance of Claims................................................................................................37
    B.    Claims Objections, Settlements, Claims Allowance ...................................................37
    C.    Claims Estimation ...................................................................................................37
    D.    Disputed Claims Reserve .........................................................................................38
    E.    Adjustment to Claims Without Objection ..................................................................38
    F.    Time to File Objections to Claims .............................................................................38
    G.    Disallowance of Late Claims ....................................................................................38
    H.    Amendments to Claims ............................................................................................38
    I.    No Distributions Pending Allowance ........................................................................39
    J.    Distributions After Allowance ..................................................................................39

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ..........................39
    A.    Discharge of Claims and Termination of Interests......................................................39
    B.    Release of Liens.......................................................................................................40
    C.    Debtor Release.........................................................................................................40
    D.    Third-Party Release..................................................................................................40
    E.    Exculpation .............................................................................................................41
    F.    Injunction ...............................................................................................................42
    G.    No Release of Any Claims Held by the United States .................................................42
    H.    Protections Against Discriminatory Treatment ...........................................................43
    I.    Setoffs & Recoupment .............................................................................................43
    J.    Subordination Rights................................................................................................43
    K.    Document Retention ................................................................................................43
    L.    Reimbursement or Contribution ................................................................................43

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
THE PLAN...............................................................................................................................44
    A.    Conditions Precedent to Confirmation.......................................................................44
    B.    Conditions Precedent to the Effective Date ...............................................................44
    C.    Waiver of Conditions ...............................................................................................45
    D.    Effect of Non-Occurrence of Conditions to the Effective Date ...................................45

E.        Substantial Consummation ..................................................................................45

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................................45
    A.        Modification and Amendments.............................................................................45
    B.        Effect of Confirmation on Modifications..............................................................46
    C.        Revocation or Withdrawal of Plan ......................................................................46

ARTICLE XI. RETENTION OF JURISDICTION..................................................................................46

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................................................48
    A.        Immediate Binding Effect....................................................................................48
    B.        Additional Documents.........................................................................................48
    C.        Payment of Statutory Fees...................................................................................48
    D.        Reservation of Rights..........................................................................................48
    E.        Successors and Assigns.......................................................................................49
    F.        Notices.................................................................................................................49
    G.        Term of Injunctions or Stays...............................................................................50
    H.        Entire Agreement................................................................................................50
    I.        Exhibits...............................................................................................................50
    J.        Nonseverability of Plan Provisions.....................................................................50
    K.        Votes Solicited in Good Faith..............................................................................51
    L.        Closing of Chapter 11 Cases...............................................................................51
    M.        Waiver or Estoppel..............................................................................................51
    N.        Dissolution of Committees...................................................................................51
    O.        Conflicts..............................................................................................................51

## INTRODUCTION

rue21, inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (each, a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>"), propose this joint plan of reorganization for the resolution of all outstanding claims against and interests in the Debtors pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>").  Holders of Claims may refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, operations, historical financial information, accomplishments during the Chapter 11 Cases, projections of future operations, and a summary and description of the Plan and certain related matters.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    *"Ad Hoc Cross-Holder Group"* means the ad hoc committee of certain holders of Claims represented by Milbank, Tweed, Hadley & McCloy LLP.

2.    *"Administrative Claim"* means a Claim for the costs and expenses of administration of the Estates pursuant to section 503(b) and 507(a)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) all fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including, but not limited to, the U.S. Trustee Fees; (c) Professional Fee Claims; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.  For the avoidance of doubt, (x) a Claim asserting priority pursuant to section 503(b)(9) of the Bankruptcy Code is included in the definition of Administrative Claim and (y) in no instance shall an Intercompany Claim be an Administrative Claim.

3.    *"Administrative Claims Bar Date"* means either (a) the date that is the deadline for filing requests for payment of Administrative Claims (other than Professional Fee Claims) established by the Bankruptcy Court pursuant to a claims bar date order or, (b) with respect to Administrative Claims (other than Professional Fee Claims) arising after such date, the first Business Day that is thirty (30) days following the Effective Date; *provided*, *that*, the Administrative Claims Bar Date shall not apply to claims entitled to administrative priority that arise on or after the Petition Date in the ordinary course of the Debtors' business.

4.    *"Administrative Claims Objection Bar Date"* means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is 180 days following the Effective Date; *provided*, *that*, the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court at the Reorganized Debtors' request after notice and a hearing.

5.    *"Affiliate"* shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

6.    *"Allowed"* means with respect to Claims:  (a) any Claim, other than an Administrative Claim, that is evidenced by a Proof of Claim which is or has been timely Filed by the applicable Claims Bar Date or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) any Claim that is listed in the Schedules and Statements as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (c) any General Unsecured Claim that is listed in the Schedules and Statements as not contingent, not unliquidated, and not disputed, and for which a Proof of Claim has been timely Filed against the applicable Debtor in an amount less than or equal to the amount listed in such Debtor's Schedules

and Statements, which shall be Allowed in the amount set forth on the Proof of Claim; or (d) any Claim Allowed pursuant to (i) the Plan, (ii) any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, (iii) a Final Order of the Bankruptcy Court, or (iv) an Allowed Claims Notice; *provided, that*, with respect to any Claim described in clause (a) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed for voting purposes only by a Final Order.  Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules and Statements as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed by the applicable Claims Bar Date, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

7.  "*Allowed Claims Notice*" means a notice Filed with the Bankruptcy Court by the Debtors (prior to the Effective Date) or Reorganized Debtors (on or after the Effective Date) identifying one or more Claims as Allowed.

8.  "*Assumed Executory Contract and Unexpired Lease Schedule*" means the schedule (as may be amended in accordance with the terms set forth in Article V hereof) of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Debtors pursuant to the provisions of Article V hereof, as determined by the Debtors and included in the Plan Supplement.

9.  "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or similar remedies that may be brought by or on behalf of the Debtors or the Estates, including causes of action or defenses arising under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law.

10.  "*Backstop DIP Term Lenders*" means Bayside Capital, LLC; Benefit Street Partners, LLC; Bennett Management Corporation; Citadel Advisors LLC; JPMorgan Chase Bank, N.A. (with respect to only its Credit Trading group); Octagon Credit Investors LLC; Stonehill Capital Management LLC; and Voya Investment Management.

11.  "*Ballots*" means the forms of ballot disseminated to Holders of Impaired Claims to vote to accept or reject the Plan approved pursuant to the Disclosure Statement Order.

12.  "*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of Pennsylvania having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the United States District Court for the Western District of Pennsylvania pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Western District of Pennsylvania.

13.  "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

14.  "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15.  "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

16.  "*Causes of Action*" means any claim, cause of action (including Avoidance Actions or rights arising under section 506(c) of the Bankruptcy Code), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured,

2

suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, Causes of Action include: (a) all rights of setoff, counterclaim, cross-claim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

17.  "*Chapter 11 Cases*" means the jointly administered chapter 11 cases commenced by the Debtors and styled *In re rue21, inc., et al.*, Chapter 11 Case No. 17-22045 (GLT), which are currently pending before the Bankruptcy Court.

18.  "*Claim*" means any claim against the Debtors, as defined in section 101(5) of the Bankruptcy Code, including: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

19.  "*Claims Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must have been Filed with respect to such Claims, pursuant to:  (a) a claims bar date order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan.

20.  "*Claims Objection Bar Date*" means the later of:  (a) the first Business Day following 180 days after the Effective Date; and (b) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, upon a motion by the Reorganized Debtors Filed before the day that is 180 days after the Effective Date.

21.  "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

22.  "*Class*" means a category of Holders of Claims or Interests as set forth in <u>Article III.B</u> hereof pursuant to section 1122(a) of the Bankruptcy Code.

23.  "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

24.  "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

25.  "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

26.  "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

27.  "*Confirmation Objection Deadline*" means the date for objecting to Confirmation, as set forth in the Disclosure Statement Order.

28.  "*Confirmation Order*" means the order of the Bankruptcy Court, confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance acceptable to Requisite Consenting Term Loan Lenders and subject to the RSA Definitive Document Requirements.

29.  "*Consenting Sponsor*" means the affiliates of the Sponsor (as defined in the Prepetition Term Loan Credit Agreement), solely in its capacity as holder of direct and/or indirect existing Interests in the Debtors.

30.  "*Consenting Sponsor Lenders*" means, collectively, the Affiliated Debt Funds and Non-Debt Fund Affiliates (each as defined in the Prepetition Term Loan Credit Agreement) that are holders of Prepetition Term Loan Claims, are parties to the Restructuring Support Agreement and each of which is a "Consenting Sponsor Lender" thereunder.

31. *"Consummation"* means "substantial consummation" as defined in section 1101(2) of the Bankruptcy Code.

32. *"Continuing Trade Parties"* means, on any date of determination from and after the Effective Date, trade vendors that are doing business with the Reorganized Debtors and any factoring Entities that are financing such trade vendors.

33. *"Converted DIP Term Loans"* means the outstanding DIP New Money Term Loans that shall be converted into Exit Term Loans on the Effective Date.

34. *"Covered Persons"* means all current and former directors, officers and managers of the Debtor, whenever serving, but solely to the extent covered by the D&O Liability Insurance Policies.

35. *"Creditors' Committee"* means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 203] entered by the Bankruptcy Court on May 23, 2017.

36. *"D&O Liability Insurance Policies"* means all insurance policies for directors, members, trustees, officers, and managers' liability issued to or maintained by the Debtors' Estates as of the Effective Date including any "tail" coverages to such policies.

37. *"Debtor Release"* means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in <u>Article VIII.C</u> hereof.

38. *"Definitive Documents"* means (a) the Plan, (b) the Plan Supplement (and each document therein and exhibit thereof), (c) the Confirmation Order, (d) the Disclosure Statement, (e) the Disclosure Statement Order, (f) the Interim DIP Order, (g) the Final DIP Order, (h) the DIP ABL Documents, (i) the DIP Term Loan Documents, (j) the Exit ABL Credit Facility Documents, (k) the Exit Term Loan Credit Facility Documents, (l) the New Organizational Documents, and (m) documents that are Definitive Documentation (as defined in the Restructuring Support Agreement), with respect to each of the foregoing, subject to RSA Definitive Requirements.

39. *"Description of Transaction Steps"* means the description of the Restructuring Transactions as set forth in the Plan Supplement.

40. *"DIP ABL Agent"* means Bank of America, N.A. as administrative agent and collateral agent to the DIP ABL Credit Agreement.

41. *"DIP ABL Credit Agreement"* means that certain Senior Secured Postpetition Debtor-In-Possession Credit Agreement, by and among rue21, inc. as borrower, its Debtor affiliates as guarantors, and the DIP ABL Agent, for and on behalf of itself and the other DIP ABL Lenders, as the same may be amended, restated, supplemented, or otherwise modified from time to time.

42. *"DIP ABL Claims"* means any Claim arising under or related to the DIP ABL Documents, which Claims shall be deemed Allowed Claims.

43. *"DIP ABL Credit Facility"* means that senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority revolving credit facility in the aggregate principal amount of up to $125,000,000, including (a) a $25,000,000 sublimit for the issuance of letters of credit and (b) a $15,000,000 sublimit for swingline loans, pursuant to the terms and conditions of the DIP ABL Credit Agreement.

44. *"DIP ABL Documents"* means the DIP ABL Credit Agreement and any other agreements and documents related thereto.

45. *"DIP ABL Lenders"* means those lenders from time to time party to the DIP ABL Documents including the DIP ABL Agent.

46. "*DIP ABL Loans*" means the amounts loaned by the DIP ABL Lenders pursuant to the DIP ABL Credit Documents.

47. "*DIP ABL Obligations*" means the DIP ABL Credit Facility and all obligations owing thereunder and under the DIP ABL Documents to the DIP ABL Agent and DIP ABL Lenders.

48. "*DIP Agents*" means the DIP ABL Agent and the DIP Term Loan Agent.

49. "*DIP Credit Agreements*" means the DIP ABL Credit Agreement and the DIP Term Loan Credit Agreement.

50. "*DIP Documents*" means, collectively, the DIP ABL Documents and the DIP Term Loan Documents.

51. "*DIP Facilities*" means, collectively, the DIP ABL Credit Facility and the DIP Term Loan Credit Facility.

52. "*DIP Facility Claim*" means any Claim arising under or related to the DIP ABL Credit Facility or the DIP Term Loan Credit Facility.

53. "*DIP Lenders*" means, collectively, the DIP ABL Lenders and the DIP Term Loan Lenders.

54. "*DIP Loans*" means, collectively, the DIP ABL Loans and the DIP Term Loans.

55. "*DIP New Money Term Loans*" shall have the meaning ascribed to the term "New-Money Loans" in the DIP Term Loan Credit Agreement.

56. "*DIP New Money Term Loan Claim*" means any claim arising under or related to the DIP New Money Loans.

57. "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

58. "*DIP Payments*" means any and all Claims held by any of the DIP Lenders or the DIP Agents arising under or related to the DIP Documents and/or the DIP Orders comprising any fees, expenses, and other payments (other than payments due for principal of, or interest on, the DIP Loans) payable thereunder.

59. "*DIP Roll-Up Term Loan Claims*" means any Claim arising under or related to the DIP Roll-Up Term Loans, which Claims shell be deemed Allowed Claims.

60. "*DIP Roll-Up Term Loans*" shall have the meaning ascribed to the term "Exchange Term Loans" in the DIP Term Loan Credit Agreement.

61. "*DIP Term Loans*" means, collectively, the DIP New Money Term Loans and the DIP Roll-Up Term Loans.

62. "*DIP Term Loan Agent*" means Wilmington Savings Fund Society, FSB as administrative agent and collateral agent under the DIP Term Loan Credit Agreement.

63. "*DIP Term Loan Credit Agreement*" means that certain Senior Secured Superpriority Debtor-In-Possession Credit Agreement dated May 18, 2017, by and among rue21, inc. as borrower, its Debtor affiliates as guarantors, the DIP Term Loan Agent for and on behalf of itself and the DIP Term Loan Lenders party thereto (as the same may be amended, restated, supplemented, or otherwise modified from time to time).

64. "*DIP Term Loan Claims*" means any Claim arising under or related to the DIP Term Loan Documents, which Claims shall be deemed Allowed Claims.

65. "*DIP Term Loan Documents*" means the DIP Term Loan Credit Agreement and any other agreements or document related thereto.

66. "*DIP Term Loan Credit Facility*" means that certain senior secured postpetition financing on a superpriority basis evidenced by the DIP Term Loan Documents.

67. "*DIP Term Loan Lenders*" means those lenders, from time to time party to the DIP Term Loan Documents.

68. "*Disbursing Agent*" means, on the Effective Date, the Debtors, their agent, or any Entity or Entities designated by the Debtors or the Reorganized Debtors to make or facilitate distributions that are to be made on or after the Initial Distribution Date pursuant to the Plan.

69. "*Disclosure Statement*" means the *Debtors' Disclosure Statement for the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of June 1, 2017, and attached as **Schedule 1** to the Disclosure Statement Order, as may be further amended, supplemented, or modified from time to time in accordance with its terms, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, and in form and substance materially consistent with this Plan.

70. "*Disclosure Statement Order*" means the *Order Approving the Debtors' Disclosure Statement and Granting Related Relief* [Docket No. [●]] entered by the Bankruptcy Court on [●], 2017, in form and substance materially consistent with this Plan.

71. "*Disputed*" means, with regard to any Claim, a Claim that is not an Allowed Claim.

72. "*Disputed Claims Reserve*" means a Cash reserve that may be funded on or after the Effective Date pursuant to Article VII.D hereof.

73. "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims are eligible to receive distributions hereunder, which shall be the Effective Date or such other date as designated in a Bankruptcy Court order.

74. "*DTC*" means The Depository Trust Company.

75. "*Effective Date*" means with respect to the Plan, the date that is a Business Day on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX of the Plan have been satisfied or waived (in accordance with Article IX.C of the Plan); (c) the Plan is declared effective by the Debtors; and (d) the Debtors shall have Filed notice of the Effective Date with the Bankruptcy Court.

76. "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

77. "*Estate*" means, as to each Debtor, the estate created for the Debtor on the Petition Date in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code.

78. "*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq*, as amended.

79. "*Excluded Parties*" means collectively, (a) the Continuing Trade Parties; (b) any of the Restructuring Support Parties, the Sponsor Entities, the DIP Lenders, or the DIP Agents, the Prepetition Agents, the Prepetition ABL Lenders, including lenders of the DIP Roll-Up Term Loans, in each case, in their capacities as such; and (c) any Professional of the Debtors, DIP Agents, Restructuring Support Parties, or Sponsor Entities including but not limited to Kirkland & Ellis LLP, Reed Smith LLP, Berkeley Research Group, LLC, Rothschild, Inc., Jones Day, PJT Partners, LP, Appel Associates LLC, Morgan, Lewis & Bockius LLP, Milbank, Tweed, Hadley & McCloy LLP, Buchanan Ingersoll & Rooney PC, Simpson Thacher & Bartlett LLP, and any local counsel to the foregoing law firms in these Chapter 11 Cases.

80.  "*Exculpated Party*" means each of the following, solely in their capacity as such:  (i)(a) the Debtors; (b) the Reorganized Debtors, and (c) with respect to each of the forgoing parties in clauses (i)(a) and (i)(b), each of such Entity and its current and former Affiliates, and such Entities' their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (ii)(a) the Creditors' Committee and each member thereof; (b) each of the Debtors' officers and directors employed or serving, as applicable, as of the Petition Date; (c) the DIP Lenders; (d) the DIP Agents; (e) the Restructuring Support Parties; (f) the Sponsor Entities; (g) the Prepetition ABL Agent; (h) the Prepetition Term Loan Agent; (i) the Unsecured Notes Indenture Trustee; (j) the Prepetition ABL Lenders; (k) Term Loan Lender Group and each member thereof; (l) the Ad Hoc Cross-Holder Group and each member thereof; and (l) with respect to each of the foregoing parties in <u>clauses (ii)(a)</u> through <u>(ii)(l)</u>, each of such Entity's current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, principals, members, employees, agents, managed accounts or funds, management companies, investment vehicles, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

81.  "*Exculpation*" means the exculpation provision set forth in <u>Article VIII.E</u> hereof.

82.  "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

83.  "*Existing Interests*" means (a) all equity interests in a Debtor that are not held by another Debtor; and (b) any claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

84.  "*Exit ABL Credit Agreement*" means the credit agreement evidencing the Exit ABL Credit Facility.

85.  "*Exit ABL Credit Facility*" means that certain senior secured revolving credit facility in the aggregate principal amount of up to $125,000,000 to be entered into by the Reorganized Debtors on the Effective Date.

86.  "*Exit ABL Loans*" means, to the extent applicable, the loans that shall be deemed on the Effective Date to be outstanding under the Exit ABL Credit Agreement.

87.  "*Exit Credit Agreements*" means, collectively, the Exit ABL Credit Agreement and the Exit Term Loan Credit Agreement.

88.  "*Exit Credit Facilities*" means, collectively, the Exit ABL Credit Facility and the Exit Term Loan Credit Facility.

89.  "*Exit Credit Facilities Documents*" means the agreements and related documents governing the Exit Credit Facilities.

90.  "*Exit ABL Credit Facility Documents*" means the agreements and related documents governing the Exit ABL Credit Facility.

91.  "*Exit Term Loan Credit Agreement*" means the credit agreement evidencing the Exit Term Loan Credit Facility.

92.  "*Exit Term Loan Credit Facility*" means that certain senior secured term loan credit facility in the aggregate principal amount of $50,000,000, including the Converted DIP Term Loans, plus the amount of any unpaid and accrued interest on the Converted DIP Term Loans as of the Effective Date, to be entered into by the Reorganized Debtors on the Effective Date.

93. "*Exit Term Loan Credit Facility Documents*" means the agreements and related documents governing the Exit Term Loan Credit Facility.

94. "*Exit Term Loans*" means the loans that shall be deemed on the Effective Date to be outstanding under the Exit Term Loan Credit Agreement.

95. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

96. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent.

97. "*Final DIP Order*" means that certain *Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. [●] entered by the Bankruptcy Court on [●], 2017].[1]

98. "*Final Order*" means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, is in full force and effect, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek leave to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, motion for leave to appeal or petition for certiorari, or request for reargument or further review or rehearing has been timely Filed, or (b) any appeal that has been or may be taken, motion for leave to appeal, or any petition for certiorari or request for reargument or further review or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed, from which leave was sought or from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

99. "*General Unsecured Claim*" means any Unsecured Claim other than:  (a) Intercompany Claims; (b) Administrative Claims; (c) Professional Fee Claims; (d) Priority Tax Claims; (e) Other Priority Claims; (f) Section 510(b) Claims; and (g) Existing Interests.

100. "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

101. "*Holder*" means an Entity holding a Claim or an Interest, as applicable.

102. "*Impaired*" means, with respect to a Claim, or Class of Claims, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

103. "*Initial Distribution Date*" means the date on which the Disbursing Agent shall make initial distributions to Holders of Allowed Claims pursuant to the Plan, which shall be a date no later than the Effective Date for Holders of Allowed Claims entitled to distributions of securities under the Plan, or as soon as reasonably practicable thereafter, and no later than forty-five (45) days after the Effective Date for Holders of all other Claims including Allowed General Unsecured Claims, or as soon as reasonably practicable thereafter but in any event no later than sixty (60) days after the Effective Date.

104. "*Insurance Contract*" means all insurance policies that have been issued at any time to or that provide coverage to any of the Debtors and all agreements, documents, or instruments relating thereto.

---

[1]    The Plan will be supplemented to include the Document No. and Date once the Court enters the Final DIP Order.

105. "*Insurer*" means any company or other entity that issued an Insurance Contract, any third party administrator, and any respective predecessors and/or affiliates thereof.

106. "*Intercompany Claim*" means any Claim held by a Debtor against any Debtor, including, for the avoidance of doubt, all prepetition and postpetition Claims.

107. "*Intercompany Interest*" means any Interest held by a Debtor in a Debtor.

108. "*Interest*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in the Debtors (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in such Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any claims against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

109. "*Interim Compensation Order*" means that certain *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and (II) Granting Related Relief* [Docket No. [●] entered by the Bankruptcy Court on [●], 2017].

110. "*Interim DIP Order*" means that certain *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 141], entered by the Bankruptcy Court on May 18, 2017.

111. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

112. "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

113. "*Local Bankruptcy Rules*" means the local rules for the United States Bankruptcy Court for the Western District of Pennsylvania.

114. "*Management Equity Incentive Plan*" means that certain post-Effective Date director and employee compensation program to be approved and implemented by the New Board.

115. "*New Board*" means the initial board of directors of Reorganized Holdings as of the Effective Date.

116. "*New Board Observer*" shall have the meaning set forth in Article IV.K of the Plan.

117. "*New Equity*" means the equity interests of Reorganized Holdings.

118. "*New Organizational Documents*" means such certificates or articles of incorporation, certificates of formation, certificates of conversion, by-laws, limited liability company agreements, stockholders' agreements, registration rights agreements, or such other applicable formation and governance documents of some or all of the Reorganized Debtors, forms of which shall be included in the Plan Supplement.

119. "*Non-Continuing Trade Parties*" means, on any date of determination from and after the Effective Date, any trade vendors that are not doing business with the Reorganized Debtors and any factoring Entities that are not financing any trade vendors doing business with the Reorganized Debtors.

120. "*Notice and Claims Agent*" means Kurtzman Carson Consultants LLC, in its capacity as notice and claims agent and administrative advisor for the Debtors' Estates.

121. "*OCP Order*" means that certain *Order (I) Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business, and (II) Granting Related Relief* [Docket No. [●]] entered by the Bankruptcy Court on [●], 2017.

122. "*Other Priority Claim*" means a Claim asserting a priority described in section 507(a) of the Bankruptcy Code that is not:  (a) an Administrative Claim; (b) a DIP Facility Claim; (c) a Professional Fee Claim; or (d) a Priority Tax Claim.

123. "*Other Secured Claim*" means a Secured Claim that is not:  (a) a DIP Facility Claim; (b) a Prepetition ABL Claim; (c) a Prepetition Term Loan Claim; or (d) a Priority Tax Claim (to the extent such Priority Tax Claim is a secured claim).

124. "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

125. "*Petition Date*" means May 15, 2017.

126. "*Plan*" means this *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, including any appendices, exhibits, schedules and supplements to the Plan that are contained in the Plan Supplement, as may be further amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof and the Restructuring Support Agreement, subject to the RSA Definitive Document Requirements.

127. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, which the Debtors shall File not later than ten (10) days prior to the earlier of the Confirmation Objection Deadline and the Voting Deadline, or as soon as reasonably practical, and any additional documents, Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, as may be amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules, and the Restructuring Support Agreement, and which is comprised of, among other documents, the following:  (a) New Organizational Documents; (b) Assumed Executory Contract and Unexpired Lease Schedule; (c) a schedule of retained Causes of Action; (d) the identity of the New Board for the Reorganized Debtors; (e) the Exit ABL Credit Agreement or term sheet thereof; (f) the Exit Term Loan Credit Agreement or term sheet thereof; and (g) the Description of Transaction Steps.  Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (g).  The Debtors shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date in accordance with <u>Article IX</u> hereof, subject to the RSA Definitive Documents Requirements.

128. "*Prepetition ABL Agent*" means Bank of America, N.A. as administrative agent, collateral agent, letter of credit issuer, and swing line lender for the Prepetition ABL Credit Facility.

129. "*Prepetition ABL Claims*" means all Claims against the Debtors arising under the Prepetition ABL Loan Documents, which Claims shall be deemed Allowed Claims.

130. "*Prepetition ABL Credit Agreement*" means that certain Credit Agreement, dated as of October 10, 2013 among the Debtors, the Prepetition ABL Agent, and the Prepetition ABL Lenders.

131. "*Prepetition ABL Credit Facility*" means the prepetition senior secured revolving financing in the aggregate principal amount of up to $150,000,000 at any time outstanding provided by the Prepetition ABL Lenders.

132. "*Prepetition ABL Lenders*" means the lenders that are a party to the Prepetition ABL Credit Agreement, in their capacities as such.

133. "*Prepetition ABL Loan Documents*" means, collectively, the Prepetition ABL Credit Agreement, the Prepetition Intercreditor Agreement and any other collateral and ancillary documents, including all applicable forbearance agreements, executed in connection with the Prepetition ABL Credit Agreement.

134. "*Prepetition Agents*" means, collectively, the Prepetition ABL Agent and the Prepetition Term Loan Agent.

135. "*Prepetition Intercreditor Agreement*" means that certain Intercreditor Agreement, dated as of October 10, 2013 (as supplemented by that certain ABL/First Lien Intercreditor Acknowledgment and Agreement, dated as of May 18, 2017), by and among the Prepetition ABL Agent and the Prepetition Term Loan Agent, and acknowledged and agreed to by the Debtors. The Prepetition Intercreditor Agreement shall be construed to be part of the Prepetition ABL Loan Documents and the Prepetition Term Loan Documents.

136. "*Prepetition Loan Documents*" means, collectively, the Prepetition ABL Loan Documents and the Prepetition Term Loan Documents.

137. "*Prepetition Secured Parties*" means, collectively, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent, and the Prepetition Term Loan Lenders.

138. "*Prepetition Term Loan Agent*" means Wilmington Savings Fund Society, FSB, as successor to JPMorgan Chase Bank, N.A., or any successor thereto, as administrative agent and collateral agent under the Prepetition Term Loan Credit Agreement, in its capacity as such.

139. "*Prepetition Term Loan Claims*" means all Claims against the Debtors arising under the Prepetition Term Loan Documents, which Claims shall be deemed Allowed Claims.

140. "*Prepetition Term Loan Credit Agreement*" means that certain Credit Agreement, dated as of October 10, 2013, among Rhodes Holdco, Inc., rue21, inc., the Prepetition Term Loan Agent, and the Prepetition Term Loan Lenders.

141. "*Prepetition Term Loan Credit Facility*" means the $538,500,000 prepetition senior secured term loan credit facility evidenced by the Prepetition Term Loan Documents.

142. "*Prepetition Term Loan Deficiency Claim*" means the portion of the Prepetition Term Loan Claims constituting unsecured Claims under section 506(a) of the Bankruptcy Code, which Claims shall be deemed Allowed Claims.

143. "*Prepetition Term Loan Documents*" means, collectively, the Prepetition Term Loan Credit Agreement, including the Prepetition Intercreditor Agreement, and any other collateral and ancillary documents, including any applicable forbearance agreement, executed in connection with the Prepetition Term Loan Credit Agreement.

144. "*Prepetition Term Loan Lenders*" means the lenders party to the Prepetition Term Loan Credit Agreement, in their capacities as such.

145. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

146. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes (or sub-Classes, as the case may be) entitled to share in the same recovery as such Allowed Claim under the Plan; *provided*, *that*, solely for purposes of this definition of *Pro Rata* as used in Article II.C hereof, the term Class shall also include a category for Holders of DIP Facility Claims.

147. "*Professional*" means any Entity: (a) retained in the Chapter 11 Cases pursuant to and in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

148. "*Professional Fee Claims*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

149. "*Professional Fee Claims Estimate*" means the amount of Professional Fee Claims that are estimated by each Professional retained by the Debtors and the Creditors' Committee in good faith to be accrued but unpaid as of the Effective Date.

150. "*Professional Fee Escrow*" means an interest bearing escrow account to be funded on the Effective Date with Cash on hand in an amount equal to the Professional Fee Claims Estimate.

151. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

152. "*Quarterly Distribution Date*" means the first Business Day after the end of each quarterly calendar period (*i.e.*, March 31, June 30, September 30, and December 31 of each calendar year) occurring after the Effective Date.

153. "*Reinstated*" or "*Reinstatement*" means:  (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim (other than a Debtor or an insider (as defined in section 101(31) of the Bankruptcy Code)) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder.

154. "*Released Party*" means, collectively, in each case solely in their capacity as such:  (a) each Debtor and Reorganized Debtor; (b) the Creditors' Committee and each member thereto; (c) each of the Debtors' officers and directors employed or serving, as applicable, as of the Petition Date; (d) the DIP Lenders; (e) the DIP Agents; (f) the Prepetition Term Loan Agent; (g) the Prepetition ABL Agent; (h) the Prepetition ABL Lenders; (i) each member of the Term Loan Lender Group; (j) each member of the Ad Hoc Cross-Holder Group; (k) the Restructuring Support Parties; (l) the Sponsor Entities; (m) the Unsecured Notes Indenture Trustee; (n) solely with respect to the Entities identified in <u>sections (a)</u> through <u>(m)</u>, each of such Entity's current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, principals, members, employees, agents, managed accounts or funds, management companies, investment vehicles, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided, however*, that Prepetition Term Loan Lenders that do not participate in the DIP Term Loan Credit Facility shall not constitute Released Parties.

155. "*Releasing Parties*" means each of the following in its capacity as such:  (a) all Holders of Claims that are deemed to accept the Plan; (b) each Debtor and Reorganized Debtor; (c) the Debtors' current and former officers, directors, and managers; (d) the DIP Lenders; (e) the DIP Agents; (f) the Prepetition ABL Agent; (g) Prepetition ABL Lenders; (h) the Prepetition Term Loan Agent; (i) the Creditors' Committee and each member thereto; (j) the Restructuring Support Parties; (k) the Sponsor Entities; (l) the Ad Hoc Cross-Holder Group; (m) the Term Loan Lender Group; and (n) all other Holders of Claims who receive Ballots <u>and</u> do not opt out of the releases provided by the Plan pursuant to a duly completed Ballot submitted prior to the Voting Deadline.

156. "*Reorganized Debtors*" means each of the Debtors, as reorganized pursuant to and under the Plan, including any transferee or successor thereto by merger, consolidation, transfer or otherwise, on or after the Effective Date.

157. "*Reorganized Holdings*" means Rhodes Holdco Inc., as reorganized pursuant to and under the Plan, including any transferee or successor thereto by merger, consolidation, transfer or otherwise, on or after the Effective Date.

158. *"Reserved Avoidance Actions"* means all Avoidance Actions of the Debtors' Estates as of the Effective Date, other than any actions against any of the Excluded Parties.

159. *"Restructuring Documents"* means the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, and the various agreements and other documentation formalizing or implementing the Plan and the transactions contemplated thereunder, each subject to the RSA Definitive Document Requirements.

160. *"Restructuring Expenses"* means the reasonable and documented fees and expenses of (a) the Term Loan Advisors, (b) the Sponsor Advisor, and (c) the Cross-Holder Advisors (each of the foregoing capitalized terms as defined in the Restructuring Support Agreement).

161. *"Restructuring Support Agreement"* means that certain Restructuring Support Agreement, dated as of May 15, 2017, by and among all of the Restructuring Support Parties attached as Exhibit E to the *Declaration of Todd M. Lenhart, Acting Chief Financial Officer and Senior Vice President of Accounting of rue21, inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 8].

162. *"Restructuring Support Parties"* shall have the meaning ascribed to such term in the Restructuring Support Agreement.

163. *"Restructuring Transactions"* has the meaning set forth in <u>Article IV.C</u>.

164. *"RSA Definitive Document Requirements"* means that the Definitive Documents shall be subject to the respective consent rights of the Debtors and the applicable Restructuring Support Parties as set forth in the Restructuring Support Agreement.

165. *"Schedules and Statements"* means the schedules of assets and liabilities, schedules of Executory Contracts or Unexpired Leases, and statements of financial affairs, to be Filed by the Debtors on or before June 24, 2017 pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be or may have been amended, modified, or supplemented from time to time.

166. *"Section 510(b) Claim"* means any Claim against any Debtor:  (a) arising from the rescission of a purchase or sale of a security of any Debtor or an affiliate of any Debtor; (b) for damages arising from the purchase or sale of such a security; or (c) for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a claim; *provided that* a Section 510(b) Claim shall not include any claims subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to Existing Interests.

167. *"Secured"* means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

168. *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder.

169. *"Security"* means a security as defined in section 2(a)(1) of the Securities Act.

170. *"Servicers"* means the Prepetition ABL Agent, the Prepetition Term Loan Agent, the DIP Agents and the Unsecured Notes Indenture Trustee.

171. *"Sponsor Entities"* means, collectively, the Consenting Sponsor and Consenting Sponsor Lenders.

172. *"Term Loan Adjustment"* means an adjustment to the amount of New Equity (which adjustment shall be (x) negative in the event the product of the immediately succeeding clauses (A) and (B) is negative or (y) positive

in the event the product of the immediately succeeding clauses (A) and (B) is positive) to be received by Holders of Allowed Prepetition Term Loan Claims equal to the product of (A) the result of (i) the ratio, expressed as a percentage, of the amount of such Holder's Allowed DIP Roll-Up Term Loan Claims to the amount of all Allowed DIP Roll-Up Term Loan Claims less (ii) the ratio, expressed as a percentage, of the amount of such Holder's Allowed Prepetition Term Loan Claims to the amount of all Allowed Prepetition Term Loan Claims multiplied by (B) (i) 44% in the event that Class 5 votes to accept the Plan or (ii) 47% in the event that Class 5 does not vote to accept the Plan.

173. *"Term Loan Lender Group"* means that group of Prepetition Term Loan Lenders represented by Jones Day.

174. *"Third-Party Release"* means the release provision set forth in <u>Article VIII.D</u> hereof.

175. *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

176. *"Unimpaired"* means, with respect to a Class of Claims, a Class of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

177. *"Unsecured Notes"* means those certain 9.00% senior notes due October 2021, issued by Rhodes Merger Sub, Inc. (as predecessor to rue21, inc.), in the original aggregate principal amount of $250,000,000 pursuant to the Unsecured Notes Indenture.

178. *"Unsecured Notes Claim"* means any Claim arising under or related to the Unsecured Notes or the Unsecured Notes Indenture, including fees, costs, expenses, indemnities, and other charges under the Unsecured Notes or the Unsecured Notes Indenture.

179. *"Unsecured Notes Indenture"* means that certain Indenture, dated as of October 10, 2013, by and among Rhodes Merger Sub, Inc. (as predecessor to rue21, inc.), as issuer, the subsidiary guarantors party thereto, and the Unsecured Notes Indenture Trustee, as successor to Wells Fargo Bank, National Association, as amended, supplemented, or otherwise modified from time to time in accordance with its terms.

180. *"Unsecured Notes Indenture Trustee"* shall mean Wilmington Trust, National Association, solely in its capacity as successor indenture trustee under the Unsecured Notes Indenture, and any successors in such capacity.

181. *"Unsecured Notes Indenture Trustee Fees"* means the reasonable and documented compensation, fees, expenses, disbursements and indemnity claims of the Unsecured Notes Indenture Trustee, including without limitation, any reasonable and documented fees, expenses and disbursements of attorneys, advisors or agents retained or utilized by the Unsecured Notes Indenture Trustee, whether prior to or after the Petition Date and whether prior to or after the Effective Date.

182. *"Unsecured"* means, with respect to any Claim, any Claim that is not a Secured Claim.

183. *"U.S. Trustee"* means the United States Trustee for the Western District of Pennsylvania.

184. *"U.S. Trustee Fees"* means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

185. *"Voting Deadline"* means [●], 2017, at 4:00 p.m. (prevailing Eastern time), as such date may be extended in accordance with the solicitation procedures approved pursuant to the Disclosure Statement Order.

186. *"Voting Record Date"* means [●], 2017.

B.        *Rules of Interpretation*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with its respective terms and the terms hereof; (4) any reference to an Entity as a Holder of a Claim includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; and (14) any effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.        *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.        *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.        *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.        *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control. In the event of an inconsistency between the Plan and any Definitive Documents or other documents, schedules or exhibits contained in the Plan Supplement, subject to the RSA Definitive Document Requirements, such Definitive Document or other document, schedule or exhibit shall control. In the event of an inconsistency between the Plan or any Definitive Documents or other documents, schedules or exhibits contained in the Plan Supplement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, DIP ABL CLAIMS, DIP NEW MONEY TERM**
**LOAN CLAIMS, DIP ROLL-UP TERM LOAN CLAIMS AND UNITED STATES TRUSTEE STATUTORY**
**FEES**

A.      *Administrative Claims and Professional Fee Claims*

Other than with respect to the DIP Facility Claims, and unless otherwise agreed to by the Holder of an Allowed Administrative Claim or an Allowed Professional Fee Claim, and the Debtors or the Reorganized Debtors, as applicable, to the extent an Allowed Administrative Claim or an Allowed Professional Fee Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim and/or an Allowed Professional Fee Claim will receive, in full and final satisfaction of its Allowed Administrative Claim and/or Allowed Professional Fee Claim, Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim and/or Allowed Professional Fee Claim either:  (1) if such Administrative Claim and/or Allowed Professional Fee Claim is Allowed as of the Effective Date, on the Effective Date; (2) if the Administrative Claim and/or Professional Fee Claim is not Allowed as of the Effective Date,(a) no later than thirty (30) days after the date on which an order of the Bankruptcy Court Allowing such Administrative Claim and/or Professional Fee Claim becomes a Final Order, or as soon thereafter as reasonably practicable, (b) at such time and upon such terms as set forth in the order of the Bankruptcy Court, or (c) with respect to an Administrative Claim that is Allowed after the Effective Date, at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (3) if the Allowed Administrative Claim and/or Allowed Professional Fee Claim is based on liabilities incurred by the Debtors' Estates in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim and/or Allowed Professional Fee Claim, without any further action by the Holder of such Allowed Administrative Claim and/or Allowed Professional Fee Claim.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the OCP Order) or as provided by Article II.B or Article II.C hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors no later than the Administrative Claims Bar Date,; *provided that* the Administrative Claims Bar Date shall not apply to claims entitled to administrative priority that arise on or after the Petition Date in the ordinary course of the Debtors' business. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date.

B.      *Professional Compensation*

1.      Final Fee Applications

All final requests for payment of Professional Fee Claims must be Filed with the Bankruptcy Court and served on the Debtors (or the Reorganized Debtors) no later than the first Business Day that is forty-five (45) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

2.      Professional Fee Escrow

If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow. The Debtors shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate. Funds held in the Professional Fee Escrow shall not be considered property of the Debtors' Estates or property of the Reorganized Debtors, but shall revert to the Reorganized Debtors only after all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full. The Professional Fee Escrow shall be held in trust for Professionals retained by the Debtors and the Creditors' Committee and for no other parties until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full. Professional Fees owing to the applicable Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; *provided*, *that* obligations with respect to Professional Fee Claims shall not be limited nor deemed limited to the balance of funds held in the Professional Fee Escrow. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow in any way.

For the avoidance of doubt, the Restructuring Expenses incurred, or estimated to be incurred, through the Effective Date shall be paid in full in Cash on the Effective Date without the requirement to file retention or fee applications and without any requirement for notice to or action, order, or approval of the Bankruptcy Court.

To the extent that the Professional Fee Escrow contains insufficient funds to pay all Professional Fee Claims Allowed by the Bankruptcy Court, the Reorganized Debtors shall pay such Allowed Professional Fee Claims.

3.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Reorganized Debtors, as applicable. From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention for services rendered after such date shall terminate, and the Reorganized Debtors may employ any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

4.      Substantial Contribution Compensation and Expenses

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must file an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before the Administrative Claims Bar Date.

C.      *DIP ABL Claims*

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a DIP ABL Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP ABL Claim shall either (a) be paid in full in Cash or (b) to the extent agreed to by such Holder, converted into a like amount of Exit ABL Loans; *provided, however* that the DIP Liens (as defined in the Final DIP Order) shall not be released until (y) the indefeasible payment in full in cash of each Allowed DIP ABL Claim and (z) receipt by the DIP ABL Agent (as defined in the Final DIP Order) of a payoff letter in form and substance satisfactory to the DIP ABL Agent.

D.      *DIP New Money Term Loan Claims*

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a DIP New Money Term Loan Claim agrees to a less favorable treatment, in full and final satisfaction, release, and discharge of, and in exchange for, each Allowed DIP New Money Term Loan Claim, each such Holder

17

of an Allowed DIP New Money Term Loan Claim shall receive, on a dollar-for-dollar basis, its *Pro Rata* share of the Exit Term Loan Credit Facility.

E.       *DIP Roll-Up Term Loan Claims*

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed DIP Roll-Up Term Loan Claim agrees to a less favorable treatment in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Roll-Up Term Loan Claim, each Holder of an Allowed DIP Roll-Up Term Loan Claim shall receive its *Pro Rata* share of 33% of the New Equity, subject to dilution for any New Equity issued under a Management Equity Incentive Plan.

F.       *DIP Payments*

Subject to the DIP Documents and the DIP Orders, on the Effective Date, the DIP Payments shall be (i) deemed to be Allowed in the full amount due and owing under the DIP Facilities as of the Effective Date and (ii) paid in full in Cash.

G.       *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

H.       *United States Trustee Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.       *Classification of Claims and Interests*

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP ABL Claims, and Priority Tax Claims have not been classified and are thus excluded from the Classes of Claims and Interests set forth in this <u>Article III</u>.  All Claims and Interests, other than Administrative Claims, Professional Fee Claims, DIP ABL Claims, DIP New Money Term Loan Claims, DIP Roll-Up Term Loan Claims, and Priority Tax Claims, are classified in the Classes set forth in this <u>Article III</u> for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

   1.   <u>Class Identification</u>

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below.  The Plan shall constitute a separate Plan proposed by each of the Debtors within the meaning of section 1121 of the Bankruptcy Code, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be

treated as set forth in Article III.D hereof.  For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition ABL Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | Prepetition Term Loan Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Impaired / Unimpaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 7 | Intercompany Interests | Impaired / Unimpaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 8 | Existing Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests*

   1.    Class 1 - Other Secured Claims

      (a)    *Classification*:  Class 1 consists of all Allowed Other Secured Claims.

      (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Other Secured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder thereof shall receive, at the option of the Reorganized Debtors, either:

         (i)    payment in full in Cash of such Holder's Allowed Other Secured Claim;

         (ii)    Reinstatement of such Holder's Allowed Other Secured Claim;

         (iii)    the Debtors' interest in the collateral securing such Allowed Other Secured Claim; or

         (iv)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

      (c)    *Voting:*  Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

   2.    Class 2 - Other Priority Claims

      (a)    *Classification*:  Class 2 consists of all Allowed Other Priority Claims.

      (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Other Priority Claim, in full and final

satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder thereof shall receive, at the option of the Reorganized Debtors, either:

(i)       payment in full in Cash of such Holder's Allowed Other Priority Claim; or

(ii)      such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)     *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.   Class 3 - Prepetition ABL Claims

(a)     *Classification:*  Class 3 consists of all Prepetition ABL Claims for all applicable Debtors.

(b)     *Allowance*:  Upon entry of the Interim DIP Order, all loans under the Prepetition ABL Credit Facility and all accrued and unpaid interest thereon and outstanding fees and expenses were fully-rolled into the DIP ABL Credit Facility.

(c)     *Treatment:*  Solely to the extent of any outstanding Allowed Prepetition ABL Claims that were not rolled-up into the DIP ABL Credit Facility including, for the avoidance of doubt, any contingent Claims for indemnification arising from the Prepetition ABL Loan Documents prior to the Petition Date, except to the extent that a Holder of an Allowed Prepetition ABL Claim agrees to a less favorable treatment of its Allowed Prepetition ABL Claim in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Prepetition ABL Claim, each such Holder thereof shall receive payment in full in Cash of such Holder's Allowed Prepetition ABL Claims; *provided, however*, that any contingent Claims for indemnification arising from the Prepetition ABL Loan Documents shall be released and discharged solely to the extent that:  (i) the Challenge Deadline (as defined in the Final DIP Order) has passed without the timely and proper commencement of a Challenge (as defined in the Final DIP Order); (ii) a Final Order is entered, denying a Challenge (as defined in the Final DIP Order); (iii) the receipt by the Prepetition ABL Parties (as defined in the Final DIP Order) of a binding agreement in writing (in a form satisfactory to the Prepetition ABL Agent) stating that (A) the Committee and its counsel have completed their review of the Prepetition ABL Documents, the Prepetition ABL Obligations (as defined in the Final DIP Order) and the Prepetition Liens (as defined in the Final DIP Order) granted to the Prepetition ABL Agent, (B) the Committee will not initiate or commence a Challenge with respect thereto, and (C) as between the Committee and each Prepetition ABL Party, the Challenge Deadline is deemed to have occurred.

(d)     *Voting:*  Class 3 is Unimpaired under the Plan.  Holders of Prepetition ABL Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.   Class 4 - Prepetition Term Loan Claims

    (a)   *Classification:*  Class 4 consists of all Prepetition Term Loan Claims for all applicable Debtors.

    (b)   *Allowance*:  The Prepetition Term Loan Claims are Allowed in the aggregate principal amount of not less than $420,998,750, plus any accrued but unpaid interest thereon payable as of the Petition Date at the applicable interest rate and any accrued but unpaid fees and expenses payable in accordance with the Prepetition Term Loan Documents. The Prepetition Term Loan Claims shall not be subject to avoidance, subordination, setoff, deduction, objection, challenge, recharacterization, surcharge under 506(c) of the Bankruptcy Code or any other claim or defense.

    (c)   *Treatment:* Except to the extent that a Holder of an Allowed Prepetition Term Loan Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Prepetition Term Loan Claim, each Holder thereof that votes in favor of the Plan shall be entitled to either a *Pro Rata* share of:

        (i)   63% of the New Equity in the event that Class 5 votes to accept the Plan; or

        (ii)   67% of the New Equity in the event that Class 5 does not vote to accept the Plan,

    in each case, subject to the  Term Loan Adjustment and dilution for any New Equity issued under a Management Equity Incentive Plan; *provided, however*, that any contingent Claims for indemnification arising from the Prepetition Term Loan Documents shall be released and discharged solely to the extent that:  (i) the Challenge Deadline (as defined in the Final DIP Order) has passed without the timely and proper commencement of a Challenge (as defined in the Final DIP Order); (ii) a Final Order is entered, denying a Challenge (as defined in the Final DIP Order); (iii) the receipt by the Prepetition Term Loan Parties (as defined in the Final DIP Order) of a binding agreement in writing (in a form satisfactory to the Prepetition Term Loan Agent) stating that (A) the Committee and its counsel have completed their review of the Prepetition Term Loan Documents, the Prepetition Term Loan Obligations (as defined in the Final DIP Order) and the Prepetition Liens (as defined in the Final DIP Order) granted to the Prepetition Term Loan Agent, (B) the Committee will not initiate or commence a Challenge with respect thereto, and (C) as between the Committee and each Prepetition Term Loan Party, the Challenge Deadline is deemed to have occurred.

    (d)   *Voting:*  Class 4 is Impaired under the Plan.  Holders of Allowed Prepetition Term Loan Claims are entitled to vote to accept or reject the Plan.

5.   Class 5 - General Unsecured Claims

    (a)   *Classification*:  Class 5 consists of all Allowed General Unsecured Claims (including, for the avoidance of doubt, Prepetition Term Loan Deficiency Claims and Unsecured Notes Claims).

    (b)   *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, if Class 5 votes to accept the Plan, then each Holder of an Allowed General Unsecured Claim shall be entitled to receive a *Pro Rata* share of:

(i)     4% of the New Equity, subject to dilution for any New Equity issued under a Management Equity Incentive Plan; and

(ii)    100% of the proceeds of Reserved Avoidance Actions (net of any expense, including any taxes relating thereto).

*provided*, *however*, if Class 5 does not vote to accept the Plan, then no Holder of an Allowed General Unsecured Claim shall receive any distribution under the Plan. Holders of Prepetition Term Loan Deficiency Claims shall be permitted to vote on the Plan, but shall waive all rights to, and shall not receive any distributions on account of, their Allowed Prepetition Term Loan Deficiency Claims.  For the avoidance of doubt, the aggregate amount of all Allowed General Unsecured Claims shall not include any Prepetition Term Loan Deficiency Claims for the purpose of determining the *Pro Rata* shares of holders of General Unsecured Claims.

(c)    *Voting*:  Class 5 is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.   Class 6 - Intercompany Claims

(a)    *Classification*:  Class 6 consists of all Allowed Intercompany Claims.

(b)    *Treatment*:   Subject to the Restructuring Transactions and the Restructuring Support Agreement, Intercompany Claims shall be, at the option of the Reorganized Debtors, either:

(i)     Reinstated as of the Effective Date; or

(ii)    cancelled without any distribution on account of such Claims.

(c)    *Voting*:   Class 6 is either Unimpaired or Impaired under the Plan.   Holders of Intercompany Claims are conclusively presumed to accept or reject the Plan, respectively, pursuant to section 1126(g) of the Bankruptcy Code.   Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.   Class 7 - Intercompany Interests

(a)    *Classification:*  Class 7 consists of all Allowed Intercompany Interests.

(b)    *Treatment*:   Subject to the Restructuring Transactions and the Restructuring Support Agreement, Intercompany Interests shall be, at the option of the Reorganized Debtors, either:

(i)     Reinstated as of the Effective Date; or

(ii)    cancelled without any distribution on account of such Interests.

(c)    *Voting*:   Class 7 is either Unimpaired or Impaired under the Plan.   Holders of Intercompany Interests are conclusively presumed to have accepted or rejected the Plan, respectively, pursuant to section 1126(g) of the Bankruptcy Code.   Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.  Class 8 - Existing Interests

    (a)    *Classification:*  Class 8 consists of all Allowed Existing Interests.

    (b)    *Treatment*:  On the Effective Date, all Allowed Existing Interests shall be cancelled without any distribution on account of such Interests.

    (c)    *Voting:*  Class 8 is Impaired under the Plan.  Holders of Allowed Existing Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.  Class 9 -Section 510(b) Claims

    (a)    *Classification:*  Class 9 consists of all Section 510(b) Claims against the Debtors.

    (b)    *Allowance:*  Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.  The Debtors are not aware of any valid Section 510(b) Claim and believe that no such Section 510(b) Claim exists.

    (c)    *Treatment*:  Allowed Section 510(b) Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims

    (d)    *Voting:*  Class 9 is Impaired under the Plan.  Holders (if any) of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such holders (if any) are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Elimination of Vacant Classes*

Any Class of Claims that does not have a Holder eligible to vote as of the Voting Deadline shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Holders of Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

F.    *Intercompany Interests, Intercompany Claims, and Existing Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests or Intercompany Claims are not being received by holders of such Intercompany Interests or Intercompany Claims on account of their Intercompany Interests or Intercompany Claims but for the purpose of administrative convenience. For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, the

Intercompany Interests in a particular Reorganized Debtor shall continue to be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests prior to the Effective Date.

G.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

       Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims*

       As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Existing Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests,  Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Distributions made to Holders of Allowed Claims in any Class shall be final.

B.      *No Substantive Consolidation*

       The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

C.      *Restructuring Transactions*

       On or after the Confirmation Date or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, in each case, with the consent of the Term Loan Lender Group, may take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan (collectively, the "Restructuring Transactions"), including:  (1) the execution, filing, and delivery of appropriate agreements or other documents of merger, sale, disposition, transfer, consolidation, reorganization, restructuring, liquidation, dissolution, or equity issuance, certificates of incorporation, certificates of conversion, certificates of formation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of sale, equity issuance, transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the issuance of the New Equity, (4) the execution of the New Organizational Documents, (5) the vesting of the Debtors' assets in the Reorganized Debtors, in each case in accordance with the Plan; (6) such other transactions that are necessary or appropriate to implement the Plan in the most tax efficient manner, including any mergers, sales, dispositions, transfers, consolidations, restructurings, conversions, formations, organizations, dissolutions or liquidations; and (7) all other transactions or actions that either (x) the Debtors or (y) the Reorganized Debtors, as applicable, determine are necessary or appropriate to implement the Plan.  The Restructuring Transactions may include a taxable transfer of substantially all or a part of the Debtors' assets or entities to a newly-formed entity (or an affiliate or subsidiary of such entity) formed and controlled by certain holders of Claims against the Debtors and,

in such case, some or all of the New Equity (and/or other interests) issued to holders of Claims pursuant to the Plan may comprise stock (and/or other interests) of such new entity (or an affiliate or subsidiary of such entity).

D.      *Sources of Consideration*

All Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be funded with proceeds from the DIP Facilities and Cash on hand as of the Effective Date and proceeds, if any, from the Reserved Avoidance Actions.  Additionally, on or after the Effective Date, the Debtors may draw available proceeds under the Exit ABL Credit Facility (subject to and in accordance with the terms thereof).  The Debtors will rely on the Cash proceeds of the Exit ABL Credit Facility and Cash on hand to fund other payments required on or after the Effective Date.

In making such Cash payments, the Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth in the Plan, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

E.      *Issuance of New Equity*

Upon the Effective Date, all equity interests of Rhodes Holdco, Inc. shall be cancelled and the New Equity shall be issued as set forth under the Plan.  The New Equity shall be freely tradable and eligible for the book-entry, delivery, depository and settlement services of DTC.  On the Effective Date, the Reorganized Debtors shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

On the Effective Date, Holders of New Equity shall be parties to certain New Organizational Documents, which shall be subject to the RSA Definitive Document Requirements.  On the Effective Date, the Reorganized Debtors and the Holders of New Equity (to the extent applicable) shall enter into and deliver the New Organizational Documents to each Entity that is intended to be a party thereto and such New Organizational Documents shall be deemed to be valid, binding, and enforceable in accordance with their terms, and each Holder of New Equity shall be bound thereby, in each case, without the need for execution by any party thereto other than the Reorganized Debtors.

F.      *Delivery of Distributions on Account of Unsecured Notes Claims*

The Unsecured Notes Claims are Allowed in the aggregate principal amount of not less than $239,200,000, plus any accrued but unpaid interest payable thereon as of the Petition Date at the applicable interest rate and any accrued but unpaid fees and expenses payable in accordance with the Unsecured Notes Indenture.  The Unsecured Notes Claims shall not be subject to avoidance, subordination, setoff, deduction, objection, challenge, recharacterization, surcharge under 506(c) of the Bankruptcy Code or any other claim or defense.

Except as otherwise reasonably requested by the Unsecured Notes Indenture Trustee, all distributions to Holders of Allowed Unsecured Notes Claims shall be deemed completed when made to the Unsecured Notes Indenture Trustee.  The Unsecured Notes Indenture Trustee shall hold or direct such distributions for the benefit of the Holders of Allowed Unsecured Notes Claims.  As soon as practicable in accordance with the requirements set forth in this Article IV, the Unsecured Notes Indenture Trustee shall arrange to deliver such distributions to or on behalf of its Holders, subject to the Unsecured Notes Indenture Trustee's charging lien.  If the Unsecured Notes Indenture Trustee is unable to make, or consents to the Reorganized Debtors making, such distributions, the Reorganized Debtors, with the Unsecured Notes Indenture Trustee's cooperation, shall make such distributions to the extent practicable to do so (provided that until such distributions are made, the Unsecured Notes Indenture Trustee's charging lien shall attach to the property to be distributed in the same manner as if such distributions were made through the Unsecured Notes Indenture Trustee).  The Unsecured Notes Indenture Trustee shall have no duties or responsibility relating to any form of distribution that is not DTC eligible and the Debtors or the Reorganized Debtors, as applicable, shall seek the cooperation of DTC so that any distribution on account of an Allowed Unsecured Notes Claim that is held in the name of, or by a nominee of, DTC, shall be made through the facilities of DTC on the Effective Date or as soon as practicable thereafter.

G.      *Exit Credit Facilities*

On the Effective Date, the Reorganized Debtors shall enter into the Exit Credit Facilities, the terms of which will be set forth in the Exit Credit Facilities Documents, as applicable.  Confirmation of the Plan shall be deemed approval of the Exit Credit Facilities and the Exit Credit Facilities Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Credit Facilities Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Credit Facilities.  Subject to (1) the indefeasible payment in full in cash of each Allowed DIP ABL Claim and (2) receipt by the DIP ABL Agent (as defined in the Final DIP Order) of a payoff letter in form and substance satisfactory to the DIP ABL Agent,  on the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Credit Facilities Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Credit Facilities Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Credit Facilities Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

H.      *Continued Corporate Existence*

The Reorganized Debtors shall adopt the New Organizational Documents on the Effective Date.  The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary or appropriate to consummate the Plan.

26

I.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan (including the Restructuring Transactions) or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Causes of Action and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, or the Bankruptcy Rules.  Notwithstanding the foregoing, Causes of Action (including any Avoidance Actions) against any Excluded Parties shall be released and discharged as of the Effective Date, except that any Reserved Avoidance Action against any Entity that was at any point a Continuing Trade Party and becomes a Non-Continuing Trade Parties shall be restored and revested in the Reorganized Debtors.

J.      *New Organizational Documents*

Each of the Reorganized Debtors will file its applicable New Organizational Documents, including the certificate of formation for each of the Reorganized Debtors, with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation or formation in accordance with the corporate laws of the respective state, province, or country of incorporation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of nonvoting equity securities. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state, province, or country of incorporation and their respective New Organizational Documents.

K.      *Directors, Managers, and Officers of the Reorganized Debtors*

As of the Effective Date, the officers and members of the New Board shall be appointed in accordance with the Restructuring Support Agreement and the respective New Organizational Documents.  The New Board shall consist of five (5) members, the initial members of which shall include (a) one director designated by Bayside Capital, LLC; (b) one director designated by Stonehill Capital Management LLC and (c) the remaining three directors selected by the Backstop DIP Term Lenders.  Voya Investment Management shall also retain non-voting board observer rights for 18 months following the Effective Date (the "New Board Observer").  To the extent any such director, manager, or officer of the Reorganized Debtors is an "insider" of the Debtors (as that term is defined in the Bankruptcy Code), the Debtors also will disclose the nature of any compensation to be paid to such director or officer in the Plan Supplement.  Each such director, manager, and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

The New Board Observer shall be given notice of, and opportunity to attend, all New Board meetings and receive in advance all materials distributed to members of the New Board in connection with such meetings; *provided that*, for this purpose, such meetings shall not include committee meetings other than special or transaction committees formed to discuss or evaluate a potential change of control transaction. The New Board Observer shall receive customary D&O indemnification and insurance from the Reorganized Debtors.

L.      *Registration Exemptions*

Subject to the below, pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Equity, as contemplated by the Plan shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act, and any other applicable United States, state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.  Such Section 1145 Securities will not be "restricted securities" (as defined in Rule 144(a)(3) under the Securities Act) and will be freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Reorganized Debtors (as defined in Rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

Because the ownership of the New Equity distributed under the Plan will be reflected through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of such New Equity under applicable securities laws.  If applicable, DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether such New Equity is exempt from registration and/or eligible for DTC's book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether such New Equity is exempt from registration and/or eligible for DTC's book-entry delivery, settlement, and depository services.

M.      *Subordination*

The allowance, classification, and treatment of satisfying all Claims and Interests under the Plan takes into consideration any and all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise.  On the Effective Date, any and all subordination rights or obligations that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be enjoined permanently.  Accordingly, distributions under the Plan to holders of Allowed Claims will not be subject to turnover or payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

N.      *Intercompany Account Settlement*

The Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

O.      *Cancellation of Existing Securities and Agreements*

On the later of (1) the Effective Date or (2) the indefeasible payment in full in cash of the Prepetition ABL Obligations and DIP ABL Obligations, except to the extent otherwise provided in the Plan, the DIP ABL Documents, the DIP Term Loan Documents, the Prepetition ABL Documents, the Prepetition Term Loan Documents, the Unsecured Notes Indenture and all notes, instruments, certificates, agreements, indentures, and other documents evidencing Claims or Interests and the Unsecured Notes shall be deemed cancelled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other person and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the DIP Term Loan Agent, the DIP ABL Agent, the Prepetition Agents and the Unsecured Notes Indenture Trustee shall have no further obligations or duties thereunder; *provided*, *however*, that notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of (a) allowing Holders to receive distributions under the Plan; (b) allowing Holders of Claims to retain their respective rights and obligations vis-à-vis other Holders of Claims pursuant to any applicable loan or other documents; (c) allowing the Servicers to enforce their rights, claims, and interests vis-à-vis any party other than the Debtors; (d) allowing the Prepetition Agents, DIP Agents and the Unsecured Notes Indenture Trustee to make the distributions in accordance with the Plan (if any), as applicable; (e) preserving any rights of the Unsecured Notes Indenture Trustee to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the Unsecured Notes Indenture, including any rights to priority of payment and/or to exercise charging liens; (f) allowing the Servicers to enforce any obligations owed to them under the Plan; (g) allowing the Servicers to exercise rights and obligations relating to the interests of the Holders under the Prepetition Loan Documents, the DIP Documents and the Unsecured Notes Indenture, as applicable; (h) allowing the Servicers to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court; and (i) permitting the Servicers to perform any functions that are necessary to effectuate the foregoing; *provided, further, however*, that except as provided below, the preceding proviso shall not affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or affect any of the release, third-party release, Exculpation or injunction provisions contained in <u>Article VIII</u> of this Plan, or result in any expense or liability to the Reorganized Debtors, as applicable; *provided*, *further*, that the foregoing shall not

28

affect the issuance of New Equity issued pursuant to the Restructuring Transactions nor the treatment of Intercompany Interests pursuant to Article III of the Plan; *provided, further,* that only such matters which by their express terms survive the termination of the DIP ABL Documents, DIP Term Loan Documents, Prepetition Loan Documents, and Unsecured Notes Indenture shall survive the occurrence of the Effective Date, including the rights of the DIP Agents, the Prepetition Agents and the Unsecured Notes Indenture Trustee to expense reimbursement and similar amounts.

P.      *Unsecured Notes Indenture Trustee Fees*

On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall pay in Cash all Unsecured Notes Indenture Trustee Fees that are required to be paid under the Unsecured Notes Indenture, without the need for the Unsecured Notes Indenture Trustee to file a fee application with the Bankruptcy Court. From and after the Effective Date, the Reorganized Debtors shall pay in Cash all Unsecured Notes Indenture Trustee Fees, including, without limitation, all Unsecured Notes Indenture Trustee Fees incurred in connection with distributions made pursuant to the Plan or the cancellation and discharge of the Unsecured Notes Indenture; *provided, however* that all Unsecured Notes Indenture Trustee Fees shall be limited to those due and owing as of the Effective Date except for those Unsecured Notes Indenture Trustee Fees limited to distributions to Holders.

Nothing in this section shall in any way affect or diminish the right of the Unsecured Notes Indenture Trustee to exercise any charging lien against distributions to Holders of Unsecured Notes Claims with respect to any unpaid Unsecured Notes Indenture Trustee Fees, as applicable.

Q.      *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, or any other Entity or Person, including, without limitation: (1) adoption or assumption, as applicable, of the agreements with existing management; (2) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (3) selection of the managers and officers for the Debtors; (4) the distribution of the New Equity as provided herein; (5) implementation of the Restructuring Transactions, including the adoption or assumption, as applicable, of any documents or agreements with respect thereto; and (6) all other acts or actions contemplated, or reasonably necessary or appropriate to properly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

On or (as applicable) prior to the Effective Date, the appropriate officers, managers, or authorized persons of the Debtors (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof), shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, certificates of formation, bylaws, operating agreements, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors, including with respect to the issuance of the New Equity and any other Restructuring Transactions, and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.Q shall be effective notwithstanding any requirements under non-bankruptcy law.

R.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, each of the Reorganized Debtors and the managers, officers, authorized persons, and members of the boards of managers thereof is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the New Organizational Documents, the New Equity and any other securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

29

S.       *Section 1146 Exemption*

Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto or pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales and use tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct and shall be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

T.       *Employee Arrangements of the Reorganized Debtors*

As of the Effective Date, the Reorganized Debtors shall be authorized to:  (a) maintain, amend, or revise employment, indemnification, and other arrangements with their directors, officers, and employees, that were employed by, or serving on the board of directors of, any of the Debtors as of the Petition Date that have not been rejected before or as of the Effective Date, subject to the terms and conditions of any such agreement; and (b) enter into new employment, indemnification, and other arrangements with directors, officers, and employees, in the case of this clause (b), as determined by the New Board.

U.       *Management Equity Incentive Plan*

Promptly on or as soon as practicable after the Effective Date, the New Board will adopt and implement the Management Equity Incentive Plan of the Reorganized Debtors with pricing, vesting, and exercise terms to be determined by the New Board.  All issuances of New Equity pursuant to the terms of the Plan shall be subject to dilution by instruments issued pursuant to the Management Equity Incentive Plan.

V.       *Director and Officer Liability Insurance*

Notwithstanding anything contained in the Plan to the contrary, the D&O Liability Insurance Policies, in effect on the Effective Date, shall be continued, subject to such D&O Liability Insurance Policies being reasonably satisfactory to the Backstop DIP Lenders.  To the extent that the D&O Liability Insurance Policies are deemed to be Executory Contracts, then, notwithstanding anything in the Plan to the contrary, the Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O Liability Insurance Policies pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair, or otherwise modify any indemnity or other obligations of the insurers under any of the D&O Liability Insurance Policies

In addition, after the Effective Date, none of the Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

W.       *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including pursuant to the Debtor Release and the Third-Party Release and including Causes of Action against Excluded Parties), the Debtors and the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Debtors' and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against such Entity as any indication that the Debtors and the Reorganized Debtors will not pursue any and all available Causes of Action against such Entity.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action, including with respect to rejected Executory Contracts and Unexpired Leases, against any Entity, except as otherwise expressly provided in the Plan (including with respect to Reserved Avoidance Actions).  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court Final Order, the Debtors and the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.**

X.      *Avoidance Actions*

The Debtors or the Estates will retain all rights with respect to the Reserved Avoidance Actions.  If Class 5 votes to accept the Plan, each Holder of an Allowed General Unsecured Claim (other than a Prepetition Term Loan Deficiency Claim) shall receive, *inter alia*, a *Pro Rata* share of 100% of any proceeds of the Reserved Avoidance Actions (net of any expense, including any taxes relating thereto). In such event, the Reserved Avoidance Actions shall be preserved for the Debtors' Estates for the exclusive benefit of the Holders of Allowed General Unsecured Claims (other than Prepetition Term Loan Deficiency Claims) and pursued, settled, abandoned or otherwise treated in a manner that is cost-neutral to the Debtors' Estates and otherwise in accordance with procedures to be established by the Debtors and the Creditors' Committee.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed rejected as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that:  (1) previously were assumed or rejected by the Debtors; (2) are identified on the Assumed Executory Contract and Unexpired Lease Schedule; or (3) are the subject of a notice of assumption or motion to assume such Executory Contracts or Unexpired Leases, as applicable, that is pending on the Effective Date, regardless of whether the requested effective date of such assumption is on or after the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections and the assumption of the Executory Contracts or Unexpired Leases listed on the Assumed Executory Contract and Unexpired Lease Schedule pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions or notices to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this <u>Article V.A</u> or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Debtors in accordance with such Executory Contract and/or Unexpired Lease's terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contract and Unexpired Lease Schedule at any time through and including forty-five (45) days after the Effective Date.

B.       *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court approving rejection of Executory Contracts or Unexpired Leases, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Notice and Claims Agent on the date that is twenty-one (21) days after (i) notice of the Effective Date; or (ii)  the date on which the Reorganized Debtors remove an Executory Contract or Unexpired Lease from the Assumed Executory Contract and Unexpired Lease Schedule on or after the Effective Date pursuant to Article V.A hereof, as applicable.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such applicable time period will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, or their property, without the need for any objection by the Debtors or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.F hereof, notwithstanding anything in the Schedules and Statements or a Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims, as applicable, and shall be treated in accordance with Article III.B hereof.

C.       *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding:  (1) the amount of any payments to cure such a default; (2) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the cure amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; *provided that* the Reorganized Debtors may settle any dispute regarding the amount of any such cure amount without any further notice to any other party or any action, order, or approval of the Bankruptcy Court; *provided*, *further*, *that*, notwithstanding anything to the contrary herein, prior to the entry of a Final Order resolving any dispute and approving the assumption and assignment of such Executory Contract or Unexpired Lease, the Debtors or the Reorganized Debtors, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease which is subject to dispute, whether by amending the Assumed Executory Contract and Unexpired Lease Schedule in accordance with Article V.A hereof or otherwise.

As soon as reasonably practicable, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court; *provided*, *that*, the Debtors reserve all rights with respect to any such proposed assumption and proposed cure amount in the event of an objection or dispute.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors no later than thirty (30) days after service of the notice providing for such assumption and related cure amount.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall constitute and be deemed to constitute the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to, action, order, or approval of the Bankruptcy Court.**

D.        *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contract or Unexpired Lease.

E.        *Indemnification Obligations*

The Debtors and the Reorganized Debtors shall honor any indemnification obligations in place immediately prior to the Effective Date (whether in by-laws, board resolutions, corporate charters, indemnification agreements, or employment contracts) solely for the Covered Persons and solely to the extent that the D&O Liability Insurance Policies provide coverage for such obligations; *provided, however*, that any such Covered Persons shall solely have recourse on account of any such obligations to the D&O Liability Insurance Policies and shall have no recourse to the Reorganized Debtors on account of any such obligations.

F.        *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.        *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contract and Unexpired Lease Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have ninety (90) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

H.        *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

I.        *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

On the Initial Distribution Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Initial Distribution Date or as soon as reasonably practicable thereafter, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), and except as otherwise set forth herein, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Disbursing Agent.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Initial Distribution Date.

The New Equity shall be deemed to be issued as of the Effective Date to the Holders of Claims entitled to receive the New Equity hereunder without the need for further action by the Disbursing Agent, the Debtors, the Reorganized Debtors, or any other Debtor or Reorganized Debtor, including, without limitation, the issuance and/or delivery of any certificate evidencing any such units, or interests, as applicable.

B.      *Distributions Generally; Disbursing Agent*

Except as otherwise provided herein, all distributions made under the Plan, on or after the Effective Date, shall be made by the Disbursing Agent.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan;  (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable, actual, and documented fees and expenses incurred by any Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable, actual, and documented attorney fees and expenses) made by such Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Account of Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be made no later than the next applicable Quarterly Distribution Date, unless the Reorganized Debtors and the applicable Holder of such Claim agree otherwise.

2. Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Reorganized Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until the Disputed Claim has become an Allowed Claim or has otherwise been resolved by settlement or Final Order; *provided*, *that*, if the Debtors do not dispute a portion of an amount asserted pursuant to an otherwise Disputed Claim, the Holder of such Disputed Claim shall be entitled to a distribution on account of that portion of such Claim, if any, that is not disputed at the time and in the manner that the Disbursing Agent makes distributions to similarly situated Holders of Allowed Claims pursuant to the Plan.

E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1. Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2. Delivery of Distributions in General

(a)    Initial Distribution Date

Except as otherwise provided herein, and subject to Article VII.D of the Plan, on the Initial Distribution Date, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; *provided*, *that*, the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided*, *further*, *that*, the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder, or, if no Proof of Claim has been Filed, the address set forth in the Schedules and Statements.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

(b)    Quarterly Distribution Date

Subject to Article VII.D of the Plan, on each Quarterly Distribution Date or as soon thereafter as is reasonably practicable but in any event no later than thirty (30) days after each Quarterly Distribution Date, the Disbursing Agent shall make the distributions required to be made on account of Allowed Claims under the Plan on such date.  Any distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that distribution is not an Allowed Claim on such date, shall be distributed on the first Quarterly Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any distribution paid on a Quarterly Distribution Date in accordance with Article VI.A hereof.

3. De Minimis Distributions; Minimum Distributions

No fractional units of New Equity shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of units of New Equity that is not a whole number, the actual distribution of units of New Equity shall be rounded as follows:  (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number; and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment thereto. The total number of authorized units of New Equity to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

No Cash payment valued at less than $100.00, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

4.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months after the applicable distribution is returned as undeliverable  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

F.    *Manner of Payment*

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

G.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanism it believes is reasonable and appropriate.  The Disbursing Agent reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

H.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim.

I.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

To the extent that the Holder of a Claim receives any payment on account of such Claim from a party that is not a Debtor or a Reorganized Debtor, such Claims shall be deemed reduced in the amount of such payment and the portion of such Claim equal to such payment shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  To the extent a Holder of a Claim receives a distribution from the Debtors on account of such Claim and also receives payment from a party that is not a Debtor on account of such Claim, such Holder of the Claim shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the total amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14)-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contracts.  To the extent that one or more of the Debtors' Insurers agrees to satisfy in full

or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.    <u>Applicability of Insurance Contracts</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Contract(s).  Notwithstanding anything herein to the contrary (including, without limitation, <u>Article VIII</u>), nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any Insurer under any Insurance Contracts, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers under the Insurance Contracts.

*J.*      *Allocation*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

*A.*      *Allowance of Claims*

On or after the Effective Date, each of the Debtors or the Reorganized Debtors, as applicable, shall have and shall retain any and all rights and defenses such Debtor had with respect to any Claim immediately prior to the Effective Date.

*B.*      *Claims Objections, Settlements, Claims Allowance*

The Reorganized Debtors shall have the authority to:  (1) File objections to Claims, settle, compromise, withdraw, or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, liquidate, allow, or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  The Reorganized Debtors shall use commercially reasonable efforts to object to any Claim (1) that is asserted in an amount that exceeds the amount owed to the Holder of the Claim according to the Debtors' books and records or (2) as to which no liability appears in the Debtors' books and records.

The Reorganized Debtors shall further use commercially reasonable efforts to file one or more Allowed Claims Notices with respect to non-contingent, liquidated Proofs of Claim that are not Allowed as of the Effective Date and as to which the Reorganized Debtors have determined not to file an objection.

*C.*      *Claims Estimation*

On or after the Effective Date, the Reorganized Debtors may (but are not required to), at any time, request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for

purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Disputed Claims Reserve*

On or prior to the Effective Date, the Reorganized Debtors or the Disbursing Agent shall be authorized, but not directed, to establish one or more Disputed Claims Reserves, which Disputed Claims Reserve shall be administered by the Reorganized Debtors or the Disbursing Agent, as applicable.

The Reorganized Debtors or the Disbursing Agent may, in their sole discretion, hold New Equity and/or Cash in the Disputed Claims Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed after the Effective Date. The Reorganized Debtors shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Disputed Claims are Allowed pursuant to a Final Order or a settlement, and such amounts will be distributable on account of such Disputed Claims that are subsequently Allowed as such amounts would have been distributable had such Disputed Claims been Allowed Claims as of the Effective Date. Any New Equity or Cash remaining in the Disputed Claims Reserve after the resolution of all Disputed Claims shall automatically vest in, and be returned to, the Reorganized Debtors.

The Reorganized Debtors or the Disbursing Agent, as applicable, will treat the Disputed Claims Reserve as a "grantor trust" of which Reorganized Holdings is the owner and grantor for U.S. federal income tax purposes. Reorganized Holdings shall file tax returns for the Disputed Claims Reserve in accordance with such treatment pursuant to Treasury Regulation section 1.671-4(a).

E.      *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors to the maximum extent provided by applicable law without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

G.      *Disallowance of Late Claims*

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE REORGANIZED DEBTORS, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

H.      *Amendments to Claims*

Except for the Filing of Proofs of Claim on account of Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan, on or after the Effective Date, a Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such

new or amended Proofs of Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

I.       *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise agreed to by the Reorganized Debtors.

J.       *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.       *Discharge of Claims and Termination of Interests*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests, and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against the Debtors and their Estates and Causes of Action against other Entities.

39

B.      *Release of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for any Secured Claims that the Debtors elect to Reinstate in accordance with <u>Article III.B</u> hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.

C.      *Debtor Release*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and their Estates shall release each Released Party, and each Released Party is deemed released by the Debtors, the Estates, and the Reorganized Debtors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates or the Reorganized Debtors, as applicable) whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Estates, or the Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the DIP Facilities, the DIP ABL Documents, the DIP Term Loan Documents, the Exit Credit Facilities Documents, the Restructuring Documents, the Restructuring Transactions, the Restructuring Support Agreement, the Chapter 11 Cases, the purchase, sale, transfer, or rescission of the purchase, sale, or transfer of any security, asset, right, or interest of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation of, or distribution of property under, the Plan, the Disclosure Statement, the Restructuring Documents or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date related or relating to any of the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (b) any individual from any claim related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. For the avoidance of doubt, Causes of Action against Excluded Parties are released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their Estates, or any other party derivatively on behalf of the Debtors or their Estates, asserting any claim or Cause of Action released pursuant to the Debtor Release.

D.      *Third-Party Release*

On and after and subject to the occurrence of the Effective Date as to each of the Releasing Parties, the Releasing Parties shall release each Released Party, and each of the Debtors, their Estates, and the Released Parties shall be deemed released from any and all Claims, Interests, obligations, rights, suits,

damages, Causes of Action, remedies and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Reorganized Debtors, as applicable) whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the DIP Facilities, the DIP ABL Documents, the DIP Term Loan Documents, the Exit Credit Facilities Documents, the Restructuring Documents, the Restructuring Transactions, the Restructuring Support Agreement, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the DIP Facility, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, preparation of, or distribution of property under, the Plan, the Disclosure Statement, the Restructuring Documents or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event or other occurrence taking place on and before the Effective Date related or relating to any of the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (b) any Entity from any claim related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct.  Notwithstanding anything to the contrary in the foregoing, the Third-Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Third-Party Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

E.    *Exculpation*

On and after and subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability to any Entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the New Organizational Documents, the DIP Facilities, the DIP ABL Documents, the DIP Term Loan Documents, the Exit Credit Facilities Documents, the Restructuring Documents, the Restructuring Transactions, the Restructuring Support Agreement, the issuance, distribution, and/or sale of any units of the New Equity or any other security offered, issued, or distributed in connection with the Plan, the Chapter 11 Cases, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; *provided*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; *provided*, *further*, that the foregoing Exculpation shall have no effect on (1) the liability of any Entity that results from any claim related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct or (2) any contractual liability for any breach of the Plan or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

F.      *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan (including the New Equity, and documents and instruments related thereto), or the Confirmation Order, all Entities that have held, hold, or may hold Claims, Interests, or Liens that have been discharged pursuant to __Article VIII.A__, released pursuant to __Article VIII.B__, __Article VIII.C__, or __Article VIII.D__, or are subject to exculpation pursuant to __Article VIII.E__ are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties:   (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right prior to the Effective Date in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

G.      *Debtor Injunction*

Except as otherwise expressly provided in the Plan the Debtors, the Reorganized Debtors, the Debtors' Estates, and the Creditors' Committee  are enjoined, from and after the Effective Date, from taking any of the following actions against any Excluded Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Reserved Avoidance Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such entities on account of or in connection with or with respect to any Reserved Avoidance Action; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any Reserved Avoidance Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any Reserved Avoidance Action; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Reserved Avoidance Action; *provided that* with respect to any Non-Continuing Trade Parties, the Debtor Injunction set forth in this __Article VIII.F__ shall be deemed to automatically terminate on the date that such vendor ceases to accept orders from the Reorganized Debtors or that such factoring party ceases to provide financing support to the Debtors' vendors, in each case, on terms substantially similar to those provided by such vendor or factoring party on the later of (x) one year prior to the Petition Date and (y) the date that such vendor began accepting orders from the Debtors or that such factoring party began providing financing support to the Debtors' vendors, as applicable.

H.      *No Release of Any Claims Held by the United States*

Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action, or other proceedings against the Released Parties for any liability whatever, including, without limitation, any Claim, suit, or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever,

42

including any liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Released Parties.

I.      Protections Against Discriminatory Treatment

To the maximum extent provided by section 525 of the Bankruptcy Code or the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      Setoffs & Recoupment

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtors and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.F hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      Subordination Rights

The classification and treatment of all Claims under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims, and any such rights shall be settled, compromised, and released pursuant to the Plan.

L.      Document Retention

On and after the Effective Date, the Debtors (or the Reorganized Debtors, as the case may be) may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors (or the Reorganized Debtors, as the case may be).

M.      Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:   (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of the Plan that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.      The Plan shall have satisfied the RSA Definitive Document Requirements.

2.      The Confirmation Order shall have satisfied the RSA Definitive Document Requirements and have been entered by the Bankruptcy Court.

3.      The Disclosure Statement Order shall have (a) satisfied the RSA Definitive Document Requirements, (b) been entered by the Bankruptcy Court and (c) have become a Final Order that has not been stayed or modified or vacated.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.      The Confirmation Order shall (a) have satisfied the RSA Definitive Document Requirements, (b) have been entered by the Bankruptcy Court and (c) have become a Final Order that has not been stayed or modified or vacated.

2.      All actions, documents, Certificates, and agreements necessary to implement the Plan and the Restructuring Transactions, including documents contained in the Plan Supplement, the Definitive Documents and the Restructuring Documents, shall have (a) satisfied the RSA Definitive Document Requirements, (b) been effected or executed and delivered, as the case may be, to the required parties and (c) to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

3.      The Professional Fee Escrow shall have been established and funded in accordance with Article II.B hereof.

4.      All authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated thereunder shall have been received, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

5.      The DIP Orders shall be in full force and effect, and the Debtors shall not be in default under any of the DIP Facilities or any of the DIP Orders (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the applicable DIP Lenders or cured by the Debtors in a manner consistent with the applicable DIP Facility and the applicable DIP Order).

6.      The Exit Credit Facilities Documents (which includes the definitive documents evidencing a senior secured asset-backed revolving credit facility in the aggregate principal amount of up to $125 million, which may be the Exit ABL Facility) shall have been executed and delivered by all of the Entities that are parties thereto (subject to the satisfaction of the RSA Definitive Document Requirements), and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Credit Facilities (which includes a senior secured asset-backed revolving credit facility in the aggregate principal amount of up to $125 million, which may be the Exit ABL Facility) shall have been waived or satisfied in accordance with the terms thereof, and the closing of the Exit Credit Facilities shall be deemed to occur concurrently with the occurrence of the Effective Date.

7.      All conditions precedent to the issuance of the New Equity (and the automatic issuance of the New Equity on the Effective Date), other than any conditions related to the occurrence of the Effective Date, shall have occurred.

8.      To the extent required under applicable non-bankruptcy law, the New Organizational Documents shall have been duly filed with the applicable authorities in the relevant jurisdictions.

9.      The Restructuring Support Agreement shall not have terminated as to all parties thereto and shall be in full force and effect and the Debtors and the applicable Restructuring Support Parties then party thereto shall be in compliance therewith.

10.      All fees and expenses payable by the Debtors pursuant to Article II.A and Article II.B.2 hereof, section 16 of the Restructuring Support Agreement, and the DIP Orders have been paid in full in Cash.

11.  With respect to all documents and agreements necessary to implement the Plan: (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; and (3) such documents and agreements shall have been effected or executed.

*C.      Waiver of Conditions*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the Debtors, subject to the consent of the Required Consenting Term Loan Lenders and, only to the extent the proposed waiver implicates the consent rights afforded any other the Restructuring Support Parties pursuant to Section 3 of the Restructuring Support Agreement, such other Restructuring Support Parties, and may be waived without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

*D.      Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any claims held by the Debtors, Claims, or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

*E.      Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments*

Except as otherwise specifically provided in the Plan and subject to the terms of the Restructuring Support Agreement, the Debtors reserve the right (subject to the Restructuring Support Agreement and the RSA Definitive Document Requirements) to modify the Plan, whether such modification is material or immaterial, and, seek Confirmation consistent with the Bankruptcy Code and, as appropriate and unless otherwise ordered by the Bankruptcy Court, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set

forth in the Plan and the Restructuring Support Agreement, the Debtors expressly reserve their rights to alter, amend, or modify the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization subject to the terms of the Restructuring Support Agreement.  If the Debtors revoke or withdraw the Plan, then:   (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or Disclosure Statement shall:  (a) constitute a waiver or release of any claims held by the Debtor, Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the extent legally permissible, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.   allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or Allowance of Claims;

2.   decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for Allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.   resolve any matters related to:   (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including cure amounts pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Assumed Executory Contract and Unexpired Lease Schedule; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.   ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.   adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

46

6.   adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.   adjudicate, decide, or resolve any and all matters related to sections 502(c), 502(j), or 1141 of the Bankruptcy Code;

8.   enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Disclosure Statement or the Plan;

9.   enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.   resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.   issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, Exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary to implement such releases, injunctions, Exculpations, and other provisions;

13.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.I.1 hereof;

14.   enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.   determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.   adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.   consider any modifications of the Plan to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.   determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.   hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.   hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.   hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof and including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22. except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

23. hear and determine all applications for allowance and payment of Professional Fee Claims;

24. enforce the injunction, release, and exculpation provisions set forth in Article VIII;

25. enter an order or Final Decree concluding or closing the Chapter 11 Cases;

26. enforce all orders previously entered by the Bankruptcy Court; and

27. hear any other matter not inconsistent with the Bankruptcy Code,

*provided, however*, that the Bankruptcy Court shall not retain exclusive jurisdiction over the Exit Credit Facilities and all matters related thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan, which agreements or other documents shall be subject to the RSA Definitive Document Requirements and the Restructuring Support Agreement, as applicable.  The Reorganized Debtors and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents (subject to the Restructuring Support Agreement and the RSA Definitive Document Requirements) and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees*

All fees due and payable pursuant to section 1930(a) of the Judicial Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee and the Reorganized Debtors.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims prior to the Effective Date.

E.    *Successors and Assigns*

Unless otherwise provided herein, the rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, and former or current officer, director, agent, representative, attorney, advisor, beneficiaries, or guardian, if any, of each Entity.

F.    *Notices*

All notices, requests, pleadings, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**The Debtors**

rue21, inc.
800 Commonwealth Drive
Warrendale, Pennsylvania 15086
Attn:    Benjamin R. Gross
Email:   bgross@rue21.com

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn:    Jonathan S. Henes, P.C., Nicole L. Greenblatt, P.C., and Robert A. Britton
Email:   jhenes@kirkland.com
         ngreenblatt@kirkland.com
         rbritton@kirkland.com

Reed Smith LLP
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222
Attn:    Eric A. Schaffer and Jared S. Roach
Email:   eschaffer@reedsmith.com
         jroach@reedsmith.com

**Creditors' Committee**

Cooley LLP
1114 Avenue of the Americas
New York, New York 10036
Attn:    Seth Van Aalten,
Email:   svanaalten@cooley.com

**The Backstop DIP Term Lenders, the DIP Term Loan Agent, the Prepetition Term Loan Agent and the Term Loan Lender Group**

Jones Day
250 Vesey Street
New York, New York 10281
Attn:    Scott J. Greenberg, Michael J. Cohen
Email:   sgreenberg@jonesday.com
         mcohen@jonesday.com

**DIP ABL Agent and the Prepetition ABL Agent**

Morgan Lewis & Bockius LLP
One Federal Street
Boston, Massachusetts 02110
Attn:    Julia Frost-Davies, Amelia C. Joiner
Email:    julia.frost-davies@morganlewis.com
              amelia.joiner@morganlewis.com

**The Sponsor Entities**
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
Attn:    Elisha Graff, Jonathan Endean
Email:    egraff@stblaw.com
              jon.endean@stblaw.com

G.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan on the Effective Date.

I.    *Plan Supplement*

After any of such documents included in the Plan Supplement are Filed, copies of such documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Notice and Claims Agent website at http://www.kccllc.net/rue21 or the Bankruptcy Court's website at https://www.pacer.gov/.

J.    *Exhibits*

All exhibits and documents attached to the Plan or included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.

K.    *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' and the Restructuring Support Parties' consent; and (3) nonseverable and mutually dependent.

L.        *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, each of the Restructuring Support Parties and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.        *Closing of Chapter 11 Cases*

The Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.        *Waiver or Estoppel*

Each Holder of a Claim shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.        *Dissolution of Creditors' Committee*

On the Effective Date, the Creditors' Committee shall be dissolved and their respective members shall be deemed released of all their duties, responsibilities, and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention of the Creditors' Committee's Professionals shall be terminated as of the Effective Date, except that the Professionals for the Creditors' Committee shall be authorized to file and seek allowance of their final fee applications and reimbursement of their respective Committee member expenses.  Prior to its dissolution, the Creditors' Committee may appoint a representative to consult with the Debtors regarding the adjudication of all Reserved Avoidance Actions, provided that such representative shall be entitled to be paid its reasonable fees and out of pocket expenses solely from the proceeds of Reserved Avoidance Actions (net of any expense, including any taxes relating thereto) prior to their distribution to Holders of Class 5 General Unsecured Claims.

P.        *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control in all respects.

*        *        *        *        *

Dated as of June 1, 2017

Respectfully submitted,

rue21, inc., Rhodes Holdco, Inc., rue services corporation, and r services llc

By:      */s/ Todd M. Lenhart*
Name:    Todd M. Lenhart
Title:   Acting Chief Financial Officer and Senior
         Vice President of Accounting

Prepared by:

Jonathan S. Henes, P.C. (admitted *pro hac vice*)
Nicole L. Greenblatt, P.C. (*pro hac vice* admission pending)
Robert Britton (admitted *pro hac vice*)
George Klidonas (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

*Proposed Counsel to the Debtors and Debtors in Possession*

- and -

Eric A. Schaffer (PA I.D. #30797)
Jared S. Roach (PA I.D. #307541)
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222
Telephone:      (412) 288-3131
Facsimile:      (412) 288-3063

*Proposed Local Counsel to the Debtors and Debtors in Possession*